Shawn M. Kesling
PO Box 340279
Tampa, FL 33694
gnvilleg8r@gmail.com
(813) 720-5552

Co-Plaintiff, *pro se*

Amanda Williams
PO Box 340279
Tampa, FL 33694
mandyface41@yahoo.com
(813) 695-8688

Co-Plaintiff, *pro se*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHAWN M. KESLING and
AMANDA WILLIAMS,

Plaintiffs,

v.

CURTIS DEAN BREMER,
HEATHER PERRY,
JOSEPH BREMER, and
NEVEAH BREMER, jointly
and severally, individually and
in concert with one another,

Defendants.

Case No.: 8:26-cv-3157-JLB-AEP

COMPLAINT FOR DAMAGES AND
APPROPRIATE EQUITABLE RELIEF

JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

This case began with a child's wish, not a scheme to commit fraud. In October 2024, Make-A-Wish confirmed plans for A.B.'s Orlando theme-park wish, including Universal Studios

tickets. Its contemporaneous email listed Amanda Williams and her then-husband—not Shawn Kesling—as the adult participants. Kesling joined the trip later, was injured during the visit, received medical treatment, and pursued a personal-injury case that ended in settlement. Curtis Bremer knew Kesling had not been part of the original travel arrangement and, during an amicable Christmas 2025 visit funded with settlement proceeds, discussed Kesling's medical recovery with both Plaintiffs.

On April 21, 2026, Williams sought modification of custody and restrictions on Bremer's summer timesharing. Following a June hearing, Bremer escalated accusations that Williams had engineered the incident and Kesling had pursued the claim to disguise a "scam." He asserted that relatives had secretly recorded conversations during A.B.'s earlier Colorado visit and identified recordings concerning Kesling's lawyer, the attraction, and his injury—all post-accident matters. Plaintiffs allege he knowingly used these assertions to portray both adults as participants in financial wrongdoing and to pressure Williams in the family litigation.

Curtis Bremer's direct messages invoked police, investigative agencies, purported child-abuse evidence, judicial action, and threatened consequences for Williams's home. A Florida child-protection investigation followed his advance warning that someone would visit the household. Bremer also knew that Kesling had prior financial convictions and was under active felony supervision. Plaintiffs allege Bremer exploited the possibility that accusations of new financial misconduct could prompt supervision-related scrutiny even without a new arrest. Kesling retained counsel to address that risk while serving as the household's sole wage earner, forcing a choice between legal protection and essential expenses. On October 14, 2026, after Kesling sought limited intervention to address the fraud accusations, Bremer copied a family-court case manager on a message again referencing the alleged "conduct" in the motion.

Plaintiffs seek relief for unprivileged defamatory publications, unlawful interception and use of protected communications, an allegedly knowingly false report, and independently coercive acts—not for lawful reporting, protected judicial advocacy, or disagreement over custody.

## I. PARTIES

1. Plaintiff Shawn M. Kesling ("Kesling") is a natural person domiciled in Hillsborough County, Florida, and a citizen of Florida. He asserts claims in his individual capacity for injuries allegedly caused by Defendants' conduct.
2. Plaintiff Amanda Williams ("Williams") is a natural person domiciled in Hillsborough County, Florida, and a citizen of Florida. She asserts claims in her individual capacity for injuries allegedly caused by Defendants' conduct.
3. Defendant Curtis Dean Bremer ("Curtis Bremer") is a natural person domiciled in Colorado and a citizen of Colorado. He is Williams's former spouse and a party to the Florida family-law proceedings described below.
4. Defendant Heather Perry ("Perry") is, on information and belief, a natural person domiciled in Colorado and a citizen of Colorado. Plaintiffs allege her knowledge of the recordings and her particular participation in statements and coordination as set forth below.
5. Defendant Joseph Bremer ("Joseph Bremer") is, on information and belief, a natural person domiciled in Colorado and a citizen of Colorado. He is the father of minor R.B. and allegedly configured recording equipment and covertly intercepted protected communications at Curtis Bremer's direction.
6. Defendant Neveah Bremer ("Neveah Bremer") is, on information and belief, a natural person domiciled in Colorado and a citizen of Colorado. She is an adult daughter of Curtis Bremer and allegedly participated in covert recordings at his direction.

## II. SUBJECT-MATTER JURISDICTION

7. This Court has original diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity exists between the Florida Plaintiffs and Colorado Defendants. Each Plaintiff, separately and in good faith, alleges more than $75,000 in legally recoverable damages against Curtis Bremer, excluding interest and costs; Plaintiffs do not aggregate their separate claims to reach the jurisdictional amount.

8. This Court independently has original federal-question jurisdiction under 28 U.S.C. § 1331 over claims arising under 18 U.S.C. §§ 2511 and 2520. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over state-law claims forming part of the same case or controversy, as applicable. Williams also invokes the pleaded diversity jurisdiction for her distinct false-report claim.

## III. PERSONAL JURISDICTION AND VENUE

9. Defendant Curtis Bremer purposefully directed allegedly tortious communications and conduct toward Plaintiffs in Florida, including the writings and alleged interception-related activity described below. Plaintiffs invoke Florida Statute § 48.193, Federal Rule of Civil Procedure 4(k), and applicable constitutional due-process principles.

10. Defendant Joseph Bremer allegedly configured and operated R.B.'s tablet in Colorado specifically to record live communications with Plaintiffs in Florida at Curtis Bremer's direction. Plaintiffs allege deliberate targeting of protected Florida communications, rather than merely incidental consequences in Florida.

11. Defendant Neveah Bremer allegedly recorded or assisted in recording live conversations involving Plaintiffs in Florida at Curtis Bremer's direction, knowing the recordings were

intended to obtain Plaintiffs' private statements for use in the dispute directed toward their Florida household.

12. Defendant Perry's alleged Florida contacts include her December 2025 visit to Plaintiffs' Florida residence and her alleged knowing participation in efforts to advance the targeted accusations. Jurisdiction is asserted only to the extent her own conduct or sufficiently supported participation in a Florida-directed tort satisfies Florida law and due process; her association with Curtis Bremer alone is insufficient.

13. Venue is proper in the Tampa Division under 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged events occurred in Hillsborough County, including receipt of the disputed communications, alleged interceptions involving Florida speakers, and Florida child-protection contacts.

14. Joinder is sought under Federal Rule of Civil Procedure 20 because the alleged interceptions, ensuing accusations, and related conduct constitute a connected series of occurrences presenting common questions of law or fact. Each Defendant's liability nevertheless depends upon that Defendant's own conduct and the elements of the applicable claim.

## IV. FACTUAL ALLEGATIONS

### *A. The Wish Trip and Defendants' Prior Knowledge*

15. On October 4, 2024, Make-A-Wish's coordinator confirmed arrangements for A.B.'s Disney World/Orlando theme-park wish, with two-day tickets for Universal Studios and Islands of Adventure. The original adult participants identified in that email were Williams and Caleb Bohannon; Kesling was not listed. Kesling later replaced Bohannon after the wish and destination package had been arranged.

16. A.B. accompanied the family on the trip in 2025. Kesling suffered injuries, underwent medical evaluation and treatment, and undertook pre-suit action concerning the accident after returning home. He later settled a federal personal-injury lawsuit. Plaintiffs deny having arranged or fabricated an injury or claim.

17. Curtis Bremer knew before July 2026 that the wish-trip planning preceded Kesling's participation. Curtis Bremer was required to sign off on A.B.'s participation in the trip during the planning stages, further supporting his knowledge Kesling was not originally part of the itinerary. In December 2025, Curtis Bremer and Perry visited Plaintiffs in Florida using airfare paid from Kesling's settlement funds, knowing the source. The visit was cordial. Kesling discussed his injuries, MRI and other neurological assessments, and continuing symptoms. Plaintiffs do not claim Curtis Bremer or Perry independently read the medical reports.

18. Curtis Bremer had earlier asked Kesling about his criminal history because Kesling lived with A.B. Kesling disclosed prior nonviolent financial offenses. Curtis Bremer later described Kesling as a "convicted felon, on parole" and used variations of "he's done this before," reflecting awareness of his history and supervision. Plaintiffs allege Curtis Bremer knew unsupported new-financial-crime accusations could carry heightened consequences for Kesling.

*B. Secret Recordings During Summer 2025*

19. After the trip, A.B. stayed in Colorado with Curtis Bremer and Perry for summer visitation while Kesling and Williams were in Florida. During that period, Curtis Bremer allegedly recorded conversations in which he was not a participant and knowingly directed Joseph

Bremer and Neveah Bremer to make other covert contemporaneous recordings to collect statements concerning the accident, Kesling's lawyer, the attraction, and his injuries.

20. First, the recorded communications included telephone or video conversations between A.B. in Colorado and Kesling, Williams, or both in Florida. Second, some calls involved both A.B. and R.B., Joseph Bremer's daughter; Joseph Bremer secretly enabled recording capability on R.B.'s tablet at Curtis Bremer's request, without notifying the participating Plaintiffs or, Plaintiffs allege, the children. Neveah Bremer made or assisted with separate covert recordings at Curtis Bremer's direction.

21. Third, while a child's telephone or video connection remained open, the devices captured separate private adult conversations in the Florida household that were not directed to the children and were distinct from the calls in which the minors participated. Plaintiffs allege the recorders and minors were not parties to these distinct adult conversations and the adult speakers had not knowingly consented to their acquisition.

22. Curtis Bremer acknowledged recordings in writing, including the statement "Joey had Rays tablets to record everything thing she was doing," and claimed multiple recordings and witnesses. He identified the lawyer, ride, and injury as recorded subjects and announced his intention to use the recordings in court. Plaintiffs have not received the original files; their allegations about recording operators, methods, and purpose are based in part on Curtis Bremer's statements and the circumstances of A.B.'s stay.

23. Neither Plaintiff gave prior consent to the recordings. Plaintiffs allege no legally effective consent or statutory authorization covered the particular interceptions and that the true purpose was to obtain litigation-related statements rather than to protect a child from a

suspected sexual or violent act. Any assertion of participant or vicarious parental consent must be evaluated separately for each conversation, including the distinct adult exchanges.

24. Perry knew of Curtis Bremer's recording arrangements, Joseph Bremer's and Neveah Bremer's participation, and Curtis Bremer's intended use against Plaintiffs. Plaintiffs allege the information was subsequently shared among participants. Her knowledge is alleged as context for separate acts attributed to her; Plaintiffs do not assert that mere knowledge automatically makes her a direct interceptor.

*C. The Custody Filings and Alleged Retaliatory Publications*

25. On April 21, 2026, Williams filed a verified supplemental petition to modify the parenting plan and child support. She also sought restrictions on summer timesharing and a transfer of venue. The petition raised concerns regarding Curtis Bremer's prior conduct and current circumstances, allegations that remain matters for the family court. Following a June 17, 2026 hearing, Williams obtained rulings she understood to grant the requested motions concerning timesharing and venue; the written orders govern their precise scope.

26. Curtis Bremer subsequently told Williams, in substance, that if she persisted in custody litigation, information would come out and the case would be stopped for an investigation. In a preserved message he asserted that presenting his supposed theme-park evidence would cause matters to be stopped "until they do an investigation." Williams alleges this conditional threat and ensuing conduct sought to pressure her to retreat from judicial relief.

27. On or about July 2, 2026, Curtis Bremer sent Williams a text asserting that she deliberately selected the attraction and that "Shawn was to file so it didn't look like a scam." He invoked "multiple recordings from your people, multiple witnesses." In another message to Williams, he referred to "Sean being involved in this" and to her "little plan" concerning the theme park

and getting money. In context, Plaintiffs allege "Sean" referred to Kesling and the statements asserted as fact that both conspired to procure fraudulent compensation.

28. The July 2 publication to Williams communicated defamatory assertions concerning Kesling to someone other than Kesling. It was not itself a third-party publication concerning Williams. Plaintiffs allege Curtis Bremer additionally advanced substantially similar allegations concerning the two of them to other persons, including participants supplying purported corroboration and, on information and belief, governmental contacts; each claimant relies for damages only on particular publications legally attributable to a Defendant and not protected by privilege or immunity.

29. Curtis Bremer knew the original Make-A-Wish planning did not involve Kesling, was aware of the medical and settlement history, and acknowledged that his recordings concerned conversations after the accident. Plaintiffs allege Curtis Bremer knew the joint-fraud accusation was false or published it recklessly, and that the April filings and June rulings furnish circumstantial evidence of retaliatory motive rather than a good-faith investigation.

30. Curtis Bremer also asserted that Perry had told a therapist and Colorado detectives that Williams persuaded her to lie or press fabricated allegations against Curtis Bremer. In a preserved message he referred to what "Heather told our therapist." Williams denies procuring false charges. The underlying publications by Perry are alleged on information and belief based on Curtis Bremer's account; their precise wording, recipients, and legal privileges remain matters for adjudication.

31. On October 12, 2026, Kesling filed a verified motion seeking limited intervention in the custody proceeding specifically to address Curtis Bremer's accusations of criminal misconduct involving the Universal claim. On October 14, Curtis Bremer emailed Kesling,

copying Court Case Manager Lauryn Young and Williams, addressing Young and asking how to handle a motion where the moving party was allegedly engaging in the "same conduct referenced in the motion." Plaintiffs allege a reader familiar with the motion would understand the reference to be to the disputed Universal allegations. This communication is pleaded for context and continuity; any independent defamation claim arising from it remains subject to litigation privilege.

*D. Direct Pressure, the Child-Protection Investigation, and Messages Involving A.B.*

32. During and after the custody dispute, Curtis Bremer sent Williams direct messages asserting that police, court personnel, state police, or Florida investigators would act against her, predicting loss of venue transfer, and declaring he would pursue matters with "extreme prejudice." He claimed evidence from family and friends would prove she was a "huge child abuser" and threatened that Florida authorities would put a lien on her house. Plaintiffs do not allege a lien was actually placed.

33. On August 22, 2026, Curtis Bremer transmitted a written communication concerning anticipated governmental intervention involving A.B. The following day, August 23, 2026, Bremer transmitted a separate video through WhatsApp referencing the Florida Department of Children and Families. Plaintiffs allege that these communications, considered with Bremer's other statements concerning investigative intervention, demonstrate his contemporaneous knowledge of, and involvement in, efforts to initiate governmental scrutiny of Williams's household.

34. Following Curtis Bremer's warning of a visit, DCF representatives visited Williams's residence; an investigator later spoke with Kesling. An investigator verbally indicated to Williams that the abuse allegations were unfounded, while explaining that additional contacts

were necessary to finish the case. Plaintiffs do not allege a final written finding identifying the reporter or adjudicating malicious reporting.

35. Williams alleges upon information and belief that Curtis Bremer knowingly made or counseled a false report to Florida's central abuse hotline accusing her of physical abuse, emotional abuse, and neglect. She relies on his prior threats, advance knowledge, accusations to her, the ensuing investigation, and the custody chronology. The report's official source remains confidential and subject to Florida Statute § 39.206(10). Williams alleges knowledge of falsity based on the underlying facts and his purpose, not merely on an unfounded investigative disposition.

36. Plaintiffs allege the unlawful acquisition of confidential adult communications and the targeted, conditional pressure tactics were intended to intimidate each of them independently of the reputational meaning of the accusations. They do not predicate tort liability merely on lawful reporting, ordinary custody-related advocacy, or Curtis Bremer's communication with his child.

37. Following Williams's April 21, 2026 custody filing and the June 17, 2026 hearing, Curtis Bremer escalated accusations and communications concerning Plaintiffs. His July 2, 2026 messages advanced allegations of financial wrongdoing; his August 22 and 23 communications referenced anticipated governmental intervention; and his October 14 communication continued to invoke the alleged misconduct underlying Kesling's intervention motion. Plaintiffs allege that the timing and content of these communications, considered with the conduct described above, support their concern about recurrence following further litigation developments.

38. Bremer's communications to Williams have included allegations of financial misconduct, threats of investigative action, and assertions of consequences affecting her household that Plaintiffs allege were unrelated to matters reasonably necessary for A.B.'s health, safety, education, or welfare. Williams and Bremer share parental responsibilities, but Plaintiffs allege those responsibilities do not require unrestricted personal communications regarding the independent disputes underlying this action. Kesling has no parental relationship with Bremer requiring direct personal communication.

39. Plaintiffs fear that notice of this federal action will lead to additional unwanted or coercive communications, attempts to obtain private conversations, or other conduct of the kind described in this Complaint. That concern is based on the alleged sequence of communications following developments in the family proceeding, rather than on any claim that retaliation upon service has already occurred. Plaintiffs seek prospective relief only to the extent evidence establishes a sufficiently imminent threat of legally cognizable and irreparable injury.

40. As alleged in Paragraphs 19–24, Bremer directed or coordinated with other persons in obtaining purported recordings and subsequently referred to recordings and information from family members and other purported witnesses. Plaintiffs are concerned that Bremer could direct intermediaries, including relatives or other persons, to deliver personal communications he is prohibited from delivering himself. Plaintiffs do not allege that every communication independently initiated by a third party is attributable to Bremer; any requested anti-circumvention order would be limited to conduct directed by Bremer or undertaken in active concert or participation with a person bound by the order, subject to Rule 65(d)(2).

41. Plaintiffs seek protection of their own interests as adult litigants, not modification of custody, timesharing, or Bremer's lawful independent contact with A.B. Plaintiffs request that Bremer's communications with Williams, to the extent a court may lawfully restrict them, be limited to matters genuinely necessary for A.B.'s health, safety, education, welfare, and compliance with existing parenting orders, and be made through a court-approved parenting application where compatible with those orders. Requested protection would also preserve proper service, communications through counsel, judicial proceedings, bona fide emergencies, and good-faith reporting to appropriate authorities.

*E. Individual Injuries*

42. Kesling alleges injury to reputation, fear of supervision-related inquiry following accusations of new financial misconduct, legal expense, unintended weight loss, disturbed sleep, episodes of panic, impaired concentration and occupational functioning, and recurring pastoral counseling. His supervising officer became aware of the circumstances. Kesling does not allege that an arrest, formal revocation proceeding, or supervision violation occurred.

43. Williams alleges personal reputational injury, severe emotional distress affecting daily functioning, counseling and prescribed medication, and expenses arising from Curtis Bremer's alleged wrongful conduct. The children's separate treatment needs provide context only; neither adult seeks damages merely on behalf of a child.

44. Kesling's felony supervision originated in Idaho and was transferred to Florida pursuant to the Interstate Compact for Adult Offender Supervision. Before making the challenged accusations, Curtis Bremer knew Kesling's prior convictions involved financial offenses, knew Kesling remained subject to supervision, and referred to him as a "convicted felon, on

parole." Kesling had earlier disclosed to Curtis Bremer that those convictions involved nonviolent financial conduct.

45. Curtis Bremer had himself experienced imprisonment and criminal supervision. Plaintiffs allege he knew that an accusation of new financial wrongdoing, even if unsubstantiated and unaccompanied by a new arrest, could cause authorities to assess Kesling's compliance, potentially involving the Idaho sending state. The allegation is one of foreseeable supervisory scrutiny and risk, not automatic revocation or a claim that Idaho actually initiated retaking proceedings.

46. Plaintiffs allege Curtis Bremer understood the significance of that risk when he sought covert recordings concerning Kesling, invoked supposed evidence of new financial crime, and repeatedly threatened investigative escalation in the dispute with Williams. Plaintiffs allege Bremer intended, or recklessly disregarded the likelihood, that these independently intrusive and coercive acts would exploit Kesling's known conditional-liberty vulnerability and cause severe distress.

47. In response to the threatened consequences, Kesling hired legal representation to evaluate the allegations and protect his position under supervision. Kesling was then the household's sole wage earner. Kesling and Williams faced the immediate choice of paying for counsel or reserving limited funds for rent and essential living expenses while Kesling remained concerned about supervisory review.

48. The resulting legal expenses and financial pressure, together with other unrelated pressures, contributed to deterioration of the household's financial stability and were among the circumstances preceding Kesling's and Williams's Chapter 13 bankruptcy filings in September 2026. Plaintiffs do not attribute their entire financial condition or bankruptcy

filings exclusively to Curtis Bremer. Kesling alleges that the ongoing intrusion and targeted risk to his liberty contributed to sustained anxiety, panic, impaired sleep and concentration, loss of weight, interference with work, and repeated pastoral counseling.

## V. CAUSES OF ACTION

### COUNT I — FEDERAL UNLAWFUL INTERCEPTION

### 18 U.S.C. §§ 2511(1)(a), 2520 — Each Plaintiff v. Curtis Bremer, Joseph Bremer, and Neveah Bremer

49. Each Plaintiff incorporates Paragraphs 19–24 insofar as they describe that Plaintiff's protected communications, the recording methods, the absence of legally effective consent, and each Defendant's personal acts.

50. Curtis Bremer intentionally intercepted qualifying communications without participating in them; Joseph Bremer and Neveah Bremer each intentionally intercepted qualifying live wire or oral communications through the described devices, knowingly and without legally effective authorization. Plaintiffs allege separate protected adult conversations as well as calls involving children, subject to the statutory meaning of "interception" and available defenses.

51. The illegal acquisition of each Plaintiff's communication violated § 2511(1)(a) and entitles the affected Plaintiff to relief under § 2520 from each Defendant proved to have engaged in an actionable interception. Curtis Bremer's directions to others are pleaded as facts relevant to his own interceptions, knowledge, and other theories; Plaintiffs do not rely solely on procurement as an independently established § 2520 damages theory.

**COUNT II — FEDERAL UNLAWFUL USE OR DISCLOSURE**

**18 U.S.C. §§ 2511(1)(c)–(d), 2520 — Each Plaintiff v. Curtis Bremer**

52. Each Plaintiff incorporates Paragraphs 22–23 and 27–29 concerning Curtis Bremer's asserted knowledge of covert recordings and his statements describing their subjects and invoking them to corroborate fraud accusations.

53. Curtis Bremer intentionally used or disclosed contents of qualifying unlawfully intercepted conversations—rather than merely claiming recordings existed—when he communicated information purportedly derived from recorded discussions of Kesling's lawyer, the attraction, and injury to advance his accusations. He knew or had reason to know the conversations had been acquired covertly and without required authorization. Each Plaintiff seeks § 2520 relief only for use or disclosure of contents of that Plaintiff's protected communication.

**COUNT III — FLORIDA UNLAWFUL INTERCEPTION AND PROCUREMENT**

**Fla. Stat. §§ 934.03, 934.10 — Each Plaintiff v. Curtis Bremer, Joseph Bremer, and Neveah Bremer**

54. Each Plaintiff incorporates Paragraphs 19–24. To the extent Florida law governs an identified communication, Curtis Bremer, Joseph Bremer, and Neveah Bremer intentionally intercepted protected communications without required consent; Curtis Bremer additionally procured Joseph Bremer's and Neveah Bremer's interceptions by directing the secret recording activities.

55. Plaintiffs allege neither all-party consent nor the limited statutory child-protection exceptions authorized obtaining post-injury litigation discussions or separate private adult

conversations. For each violation attributable to a particular Defendant, the affected Plaintiff seeks available actual or liquidated damages, appropriate equitable relief, punitive damages as authorized, and reasonable fees and costs under § 934.10, without duplicative recovery.

## COUNT IV — DEFAMATION BY STATEMENT OR IMPLICATION: KESLING

### Florida Common Law — Kesling v. Curtis Bremer

56. Kesling incorporates Paragraphs 15–18 and 26–31 only insofar as they establish the publications to Williams concerning him, the words used, falsity, Curtis Bremer's fault, and injury.

57. Curtis Bremer's July 2 written statement that "Shawn was to file so it didn't look like a scam," read with his accusation that Williams deliberately arranged the attraction and his reliance on claimed recordings, conveyed a false factual assertion that Kesling knowingly participated in staging an injury or pursuing fraudulent compensation. His additional written assertions to Williams that "Sean" was involved in the "plan" conveyed the same defamatory factual meaning.

58. Curtis Bremer published these statements to Williams, a third party as to Kesling, despite knowing the trip chronology and contrary medical context. Kesling alleges knowing or reckless falsity, alternatively negligence, and a primary improper purpose if any qualified common-interest privilege is invoked. The communications imputed new financial wrongdoing and caused reputational and related compensable harm.

## COUNT V — DEFAMATION BY STATEMENT OR IMPLICATION: WILLIAMS

### Florida Common Law — Williams v. Curtis Bremer and Perry, as applicable

59. Williams incorporates Paragraphs 26–32 concerning the joint-fraud accusation, alleged republication to third parties, and Perry's separately alleged publications. A charge that Williams and Kesling collaborated to stage an injury identifies and accuses Williams as well as Kesling; each independently actionable publication of that joint charge to a person other than Williams defames her.

60. Upon information and belief, Curtis Bremer disseminated the joint fraud accusation beyond communications addressed only to Williams, including to others from whom he claimed corroboration and in communications involving authorities. His October 14 email copying Young further incorporated by reference the allegations in Kesling's intervention motion, although Williams alleges independent damages for that email only if it is legally actionable and unprivileged.

61. Separately, upon information and belief, Perry communicated to her therapist and Colorado investigators the allegedly false factual accusation that Williams induced Perry to lie or fabricate charges against Curtis Bremer. Curtis Bremer's subsequent identification of the alleged statements and recipients supports the inference that Perry communicated their substance to him, directly or through others. Williams denies the misconduct and alleges fault and personal injury; this theory is limited by the governing law and any applicable privilege.

62. In the alternative, if Curtis Bremer published knowingly false accusations concerning Williams's abuse or neglect of children to third parties outside an applicable immunity or privilege, Williams seeks damages for those specific actionable communications without recovering twice for harm compensated under Count VII.

## COUNT VI — CIVIL CONSPIRACY TO DEFAME

### Florida Common Law — Both Plaintiffs v. Curtis Bremer, Perry, Joseph Bremer, and Neveah Bremer

63. Each Plaintiff incorporates Paragraphs 19–32 only to the extent they identify knowledge, coordinated acts, and an underlying actionable defamatory publication concerning that Plaintiff.

64. Plaintiffs allege upon information and belief a knowing agreement, inferable from Curtis Bremer's express requests for secret recordings, participants' coordinated supply of material, Curtis Bremer's statements invoking collective corroboration from "family and friends," Perry's knowledge and allegedly affirmative dissemination, and the subsequent publications, to advance known-false factual accusations against Plaintiffs in order to discredit them in the custody dispute.

65. Joseph Bremer and Neveah Bremer knowingly supplied recordings for the alleged objective; Perry knew of the recording effort and allegedly advanced false charges; Curtis Bremer directed and disseminated the accusations. The 2025 recording arrangement does not by itself establish the later defamatory agreement. Liability under this count is sought only from a Defendant shown to have knowingly joined an agreement to commit an independently actionable, unprivileged defamation, participated through an overt act, and caused the particular Plaintiff injury.

## COUNT VII — KNOWINGLY FALSE CHILD-ABUSE OR NEGLECT REPORT

### Fla. Stat. § 39.206(10) — Williams v. Curtis Bremer

66. Williams incorporates Paragraphs 32–35. On information and belief, Curtis Bremer knowingly and willfully made, or counseled another to make, a materially false report to Florida's central abuse hotline alleging Williams physically abused, emotionally abused, and neglected children, and did so knowing the accusations were false.

67. Curtis Bremer's conditional threats of investigation, advance warning to A.B., direct child-abuse accusations, and the ensuing investigation reasonably support the inference of his conduct and retaliatory purpose. Williams suffered resulting emotional, therapeutic, and other actual injury. She seeks damages, fees, and costs authorized by § 39.206(10), subject to good-faith immunity and the reporter-confidentiality and in-camera identification procedures expressly established by that statute; she does not seek unauthorized disclosure of confidential reporter records.

## COUNT VIII — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: WILLIAMS

### Florida Common Law — Williams v. Curtis Bremer

68. Williams incorporates Paragraphs 19–23, 26–27, 32–33, 36–41, and 43 insofar as they allege independent clandestine intrusion, conditional intimidation, threats concerning her home, and communications deliberately directed to her or through A.B.—not merely the defamatory meaning of a publication or a protected report.

69. Curtis Bremer intentionally or recklessly combined covert intrusion into Williams's protected speech with repeated conditional warnings of government action, threats of purported property consequences, and communications involving her child while knowing

Williams would see them, allegedly to coerce her position in pending custody litigation. Viewed cumulatively and in context, Williams alleges conduct so extreme and outrageous as to exceed all bounds of decency, independently of privileged advocacy or actionable defamation.

70. The independent coercion and intrusion directly caused severe personal distress requiring counseling and medication and impairing daily functioning. Williams seeks no duplicate award for injuries recoverable under defamation or Count VII and no damages based solely on a child's separate emotional injury.

71. Williams alleges a risk of renewed independently intrusive or coercive conduct during these proceedings, including communications unrelated to legitimate parental responsibilities. To the extent an underlying substantive cause of action legally supports such relief and the required evidence establishes threatened irreparable injury and the other prerequisites for an injunction, Williams seeks narrowly tailored prospective restrictions against Bremer's unwanted personal communications while preserving necessary communications about A.B.'s welfare through lawful, documented channels. Williams does not seek an injunction merely against alleged defamation, privileged judicial advocacy, or good-faith reporting.

**COUNT IX — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: KESLING**

**Florida Common Law — Kesling v. Curtis Bremer; in the Alternative**

72. Kesling incorporates Paragraphs 18–23, 26–29, 36–42, and 44–48 solely insofar as they describe Curtis Bremer's independent clandestine access to Kesling's communications, coercive deployment of information allegedly obtained, particularized knowledge of Kesling's supervision status, and Kesling's resulting harm.

73. Curtis Bremer knew that Kesling remained under felony supervision stemming from Idaho and that his prior offenses involved financial conduct. Curtis Bremer's own experience with incarceration and supervision, along with his references to Kesling as a felon on parole, supports the inference that he understood allegations of a new financial crime could initiate consequential scrutiny even without arrest or conviction.

74. With that knowledge, Curtis Bremer allegedly directed or participated in surreptitious interception of Kesling's calls and distinct private adult conversations, obtained information concerning Kesling's counsel and injury claim, and invoked the purportedly intercepted material in a continuing effort to intimidate and exert pressure on Kesling and Williams. This Count concerns those independently invasive and coercive acts, not merely the reputational meaning of alleged defamatory publications.

75. Kesling alleges that Curtis Bremer intentionally or recklessly exploited a specific vulnerability affecting Kesling's conditional liberty, despite knowing that resulting supervisory scrutiny could entail grave personal, professional, and household consequences. Considered together, and in light of that knowledge, the clandestine intrusion and deliberate coercion were extreme and outrageous, exceeding the bounds of conduct tolerable in a civilized community.

76. As a foreseeable response to the claimed threat, Kesling retained an attorney to protect his supervisory interests and incurred associated expense. Because he was then the sole household wage earner, those expenses required him and Williams to choose between legal protection and essential expenses, including rent. Plaintiffs allege this added financial strain contributed, together with other circumstances, to their subsequent Chapter 13 filings; they do not allege that Bremer alone caused those filings.

77. Curtis Bremer's alleged intentional or reckless intrusion and pressure directly caused Kesling severe and sustained distress beyond ordinary anger or embarrassment: persistent anxiety and panic concerning conditional liberty, sleep disruption, unintended weight loss, difficulty concentrating and functioning at work, and repeated pastoral counseling. Kesling does not allege that any supervision violation, formal revocation, or return to Idaho actually occurred.

78. The alleged distress is attributed to independently invasive and coercive conduct and its foreseeable effect upon Kesling's known circumstances. Alleged defamatory statements and communications potentially protected by judicial or reporting privilege are relied upon only for context and legally permissible evidence of purpose; their defamatory meaning or existence alone is not asserted as a separate basis for liability under this Count.

79. Kesling pleads this claim independently and, where appropriate, in the alternative under Federal Rule of Civil Procedure 8(d). He requests damages only for injuries legally attributable to conduct satisfying the separate elements of intentional infliction of emotional distress, with no double recovery for the same injuries under Counts I–IV.

80. Kesling alleges a risk of renewed independently unlawful intrusion and coercive conduct following further litigation developments. Because Kesling has no parental relationship with Bremer necessitating personal communication, Kesling requests, if supported by an underlying substantive right and the required showing of imminent irreparable injury, narrowly tailored protection against personal contact initiated by Bremer, directly or at his direction through an intermediary. The requested relief would preserve proper service, communications through counsel, participation in judicial proceedings, and other communications expressly authorized by the Court.

## VI. REQUESTS FOR EQUITABLE RELIEF

81. **PRELIMINARY RELIEF.** Plaintiffs request preliminary equitable relief pursuant to Federal Rule of Civil Procedure 65, 18 U.S.C. § 2520(b)(1), Florida Statute § 934.10(1)(a), and any other substantive equitable remedy actually available on the claims pleaded, only upon a separately supported showing of a substantial likelihood of success on the claim supporting each requested restriction, imminent irreparable injury, favorable equities, and consistency with the public interest. Plaintiffs seek relief against further unlawful interception, use, or disclosure of protected communications and, only to the extent independently authorized by substantive law and supported by the evidence, the following narrowly tailored adult-contact safeguards: (a) prohibiting Curtis Bremer from initiating direct personal contact with Kesling except through counsel, proper legal process, court proceedings, or other channels expressly allowed by the Court; (b) limiting Bremer's personal communications with Williams to matters genuinely necessary concerning A.B.'s health, safety, education, welfare, or compliance with existing parenting orders, through a court-approved parenting application where consistent with those orders, or an otherwise approved documented channel; and (c) prohibiting Bremer from directing or knowingly using another person to transmit communications he is specifically prohibited from sending himself. Any order would bind others only as permitted by Rule 65(d)(2), preserve bona fide emergency contact, lawful participation in litigation, good-faith governmental reporting, and Bremer's independent lawful parent-child contact, and would not alter custody or timesharing. Plaintiffs will seek relief, if warranted, by a separately supported motion compliant with Middle District of Florida Local Rule 6.02; this Complaint is not itself such a motion.

82. **PERMANENT RELIEF**. Following final adjudication, Plaintiffs seek narrowly tailored relief against established continuing or threatened statutory interception violations. To the extent governing substantive law authorizes prospective equitable relief for proven independently actionable misconduct and Plaintiffs establish a substantial risk of recurrence, irreparable harm, and inadequacy of legal remedies, Plaintiffs additionally request consideration of appropriately limited adult-contact and anti-circumvention safeguards consistent with Paragraph 81. Any injunction must identify the restrained acts with specificity and preserve lawful legal process, good-faith reporting, necessary parenting communications, and existing parent-child rights. If particular statements are finally adjudicated defamatory and unprivileged, Plaintiffs alternatively seek only such statement-specific permanent injunctive relief as constitutional and Florida law permit; they do not request a blanket restriction on lawful speech or ordinary court participation.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request judgment separately as to each Defendant found liable to each Plaintiff: compensatory damages for proven economic, reputational, emotional and physical injuries; actual or statutory damages under 18 U.S.C. § 2520 and Florida Statute § 934.10 as authorized; Williams's actual damages under § 39.206(10), as permitted; nonduplicative punitive damages where pleading and proof requirements are satisfied; statutory attorney's fees, recoverable costs and interest when authorized; narrowly tailored equitable or declaratory relief as specified above; narrowly tailored preliminary and permanent adult-contact and anti-circumvention safeguards against Curtis Bremer only where independently authorized and proved, with exceptions preserving necessary parenting, emergency, legal, and governmental

communications; and such further relief as lawfully follows from the findings. No duplicate recovery is sought for one injury.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on every issue triable of right under Federal Rule of Civil Procedure 38.

Respectfully submitted on October 19, 2026.

Shawn M. Kesling
PO Box 340279
Tampa, FL 33694
gnvilleg8r@gmail.com
(813) 720-5552
Co-Plaintiff, *pro se*

Amanda Williams
PO Box 340279
Tampa, FL 33694
mandyface41@yahoo.com
(813) 695-8688
Co-Plaintiff, *pro se*